# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| TERESA BARNARD, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 4:20-cv-00439-JHE |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

Plaintiff Teresa Barnard ("Barnard") seeks review, pursuant to 42 U.S.C. §§ 405(g) and 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her applications for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 1). Barnard timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. § 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

Barnard filed applications for DIB and SSI on May 22, 2017, alleging disability beginning on June 21, 2016. (Tr. 54). The Commissioner initially denied Barnard's claims, (tr. 210-29), and Barnard requested a hearing before an ALJ, (tr. 222-23). After a January 8, 2019 video hearing, the ALJ denied Barnard's claims on February 28, 2019. (Tr. 51-72). Barnard sought review by

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties in this case have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 13).

the Appeals Council, but it denied her request for review on March 11, 2020. (Tr. 1-7). On that date, the ALJ's decision became the final decision of the Commissioner. On March 28, 2020, Barnard initiated this action. (Doc. 1).

Barnard was fifty-two years old on her alleged disability onset date. (Tr. 64). Barnard has a GED and past work as a machine operator, general inspector, loan clerk, inspection agent, and survey worker supervisor. (Tr. 64-65, 150).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*,

---

[2] In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

985 F.2d 528, 531 (11th Cir. 1993).  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision.  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3]  The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  20 C.F.R. § 404.1505(a).  To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4)(i-v).  The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Barnard had not engaged in substantial gainful activity since June 21, 2016, the alleged onset date of her disability. (Tr. 56). At Step Two, the ALJ found Barnard has the following severe impairments: cervical degenerative disc disease, COPD, asthma, right shoulder bursitis and tendinitis, bilateral carpal tunnel syndrome, depression, and bipolar disorder. (Tr. 56-58). At Step Three, the ALJ found Barnard does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 58-60).

Before proceeding to Step Four, the ALJ determined Barnard's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Barnard has the RFC

> to perform medium work as defined in 20 CFR. 404.1567(c) and 416.967(c) except with frequent fingering bilaterally and occasional overhead reaching with her right dominant arm; she much [sic] avoid even moderate exposure to

> dust, odors, gases and other pulmonary irritants; she is also limited to unskilled work where her supervision is simple, direct, concrete, uncritical and non-threatening; interpersonal contact with supervisors and co-workers should be incidental to the work involved; she will do best in a well-spaced work environment or where she can frequently work alone; she may need intermittent reminders and supervision (one to two extra times per day); she should have normal, regular work breaks at least every two hours; she should have only occasional, gradual, well-explained workplace changes; she should not be required to work at face-paced [sic] production line speed; she can set ordinary daily work goals, but may need assistance with long-term or complex planning; and she should have only brief, occasional superficial contact with the general public.

(Tr. 60). At Step Four, the ALJ determined Barnard could not perform any relevant past work. (Tr. 63-64). At Step Five, the ALJ determined, based on Barnard's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy Barnard could perform. (Tr. 64-65). Therefore, the ALJ determined Barnard has not been under a disability and denied her claim. (Tr. 65-66).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Barnard raises two objections to the denial of benefits: (1) that the Appeals Council erred by failing to adequately consider records she submitted on appeal; and (2) that, considering the evidence submitted to the Appeals Council, the benefits denials are not supported by substantial

evidence. (Doc. 12 at 1). The vast majority of Barnard's brief is a recap of the evidence presented at various stages. (Doc. 12 at 1-26). The analysis portion of the brief is around three pages long, (*id.* at 26-29), and it does not shed much light on the exact nature of the errors Barnard alleges.[4] Nevertheless, the undersigned addresses each of the arguments Barnard appears to make.

After the ALJ denied her claim, Barnard submitted a number of records including a psychological evaluation from Dr. June Nichols and a one-page letter from Dr. T. Kevin Lackey. (Tr. 2, 9-13, 50). The Appeals Council considered Dr. Nichols' psychological evaluation but concluded it "does not show a reasonable probability that it would change the outcome of the [ALJ's] decision." (Tr. 2). It rejected Dr. Lackey's letter, dated May 9, 2019, because it "did not

---

[4] At various points, the Commissioner argues that Barnard's failure to fully develop an argument waives the issue. (*See, e.g.* doc. 15 at 6, n.1 (citing *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012), for the proposition that "failure to make arguments and cite authorities in support of an issue waives it" and *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004), for a similar claim); doc. 15 at 8 (citing *N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) for the proposition that "[i]ssues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived" and *Outlaw v. Barnhart*, 197 F. App'x 825, 829 n.3 (11th Cir. 2006), for that rule's application to Social Security cases). The latter two cases cite a line of authority that applies to appeals from district court rulings under the Federal Rules of Appellate Procedure. *See N.L.R.B.*, 138 F.3d at 1422 (citing FED. R. APP. P. 28(a)(4)); *Outlaw*, 197 F. App'x at 828 n.3 (citing *Cheffer v. Reno*, 55 F.3d 1517, 1519 n.1 (11th Cir. 1995), which in turn cites FED. R. APP. P. 28(a)(5)). Although the Eleventh Circuit has held the rule "applies with equal force in social security appeals," *Buttram v. Comm'r of Soc. Sec.*, 594 F. App'x 569, 572 (11th Cir. 2014), courts in this district have concluded the rule "applies to briefs filed in the federal *circuit* court, not briefs filed in the federal *district* court." *Weems v. Astrue*, No. 3:11-CV-03083-KOB, 2012 WL 2357743, at *8 (N.D. Ala. June 19, 2012). Consequently, courts in this district have generally "reviewed the record to determine whether the ALJ properly applied legal standards and supported his factual conclusions with substantial evidence," even when a plaintiff does not file a brief. *Id. See also Williams v. Colvin*, No. 4:15-CV-0906-JEO, 2016 WL 4180896, at *6 (N.D. Ala. Aug. 8, 2016), *aff'd sub nom. Williams v. Comm'r, Soc. Sec. Admin.*, 703 F. App'x 780 (11th Cir. 2017) (declining to find an issue waived when plaintiff raised it, albeit in a perfunctory manner, and did not respond to Commissioner's argument the issue was waived). The undersigned declines to find the issues Barnard raise to be waived and analyzes them as presented, although Barnard's lack of development of each argument does inform the undersigned's ultimate conclusions.

relate to the period at issue" (i.e., the period on or before the ALJ's March 5, 2019 decision). (*Id.*). Although Barnard submitted other records, she does not contend the Appeals Council's treatment of those records was error. (*See* doc. 12 at 10) ("In claiming error, plaintiff relies on two submissions . . . Dr. Lackey Letter 5/9/19 (R-50) . . . Dr. June Nichols / Gadsden Psychological Services (R-9-13) . . . .").

"With a few exceptions, the claimant is allowed to present new evidence at each stage of this administrative process," including before the Appeals Council. *Ingram v. Comm'r of Soc. Sec. Admin*, 496 F.3d 1253, 1261 (11th Cir. 2007) (citing 20 C.F.R. 404.900(b)). The Appeals Council must review a case if it receives additional evidence that is new, material, and chronologically relevant. 20 C.F.R. § 404.970(a)(5); *Ingram*, 496 F.3d at 1261. "[W]hether evidence meets the new, material, and chronologically relevant standard is a question of law subject to . . . *de novo* review," and an erroneous failure to consider such evidence warrants remand. *Washington v. Soc. Sec. Admin., Com'r*, 806 F.3d 1317, 1321 (11th Cir. 2015). New evidence is noncumulative evidence that was not previously presented to the ALJ, and that evidence is material when "there is a reasonable possibility that the new evidence would change the administrative outcome." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987). Evidence is chronologically relevant if "it relates to the period on or before the date of the [ALJ] hearing decision." *Foster v. Colvin*, No. 12-CV-4038-VEH, 2014 WL 1338095, at *4 (N.D. Ala. Mar. 28, 2014) (citing 20 C.F.R. § 404.970(b)). Even records that postdate the ALJ's decision may be chronologically relevant when they assess the conditions that existed prior to the decision and there is no evidence of deterioration. *Washington*, 806 F.3d at 1322.

One of Barnard arguments applies to both Dr. Lackey's letter and Dr. Nichols' evaluation. Specifically, she says the Appeals Council applied the wrong standard by considering whether

7

there was a "**reasonable *possibility, not probability*** that the new evidence would change the administrative result." (*Id.* at 27) (emphasis in original). Although Barnard seems to contend there is a significant difference between "probability" instead of "possibility," the Commissioner points out that the Eleventh Circuit itself has used the terms interchangeably. (Doc. 15 at 8) (citing *Washington.*, 806 F.3d at 1321-22). Although "possibility" predominates over "probability" in *Washington* and is the term generally used in earlier cases, *see, e.g., Hyde* 823 F.2d at 459, Barnard provides no argument for why "possibility" is so different from "probability" that the Appeals Council's use of the term means its evaluation of the evidence was erroneous. Furthermore, the regulations applicable to Barnard's claim (which postdate *Washington*) explicitly call for the Appeals Council to apply the "reasonable probability" standard. *See* 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5).[5] The Appeals Council did not commit reversable error by using a standard that does not contradict prior case law and that it was required to use under the regulations. Therefore, the undersigned moves on to the evidence at issue.

### A. Dr. Lackey's Letter

Barnard identifies Dr. Lackey's letter as "an opinion letter from plaintiff's long-time treating physician." (Doc. 12 at 28). The letter itself is extremely brief. Dr. Lackey states he has "been treating Ms. Barnard since 2014" and that both her neuropathy and bipolar disorder have "significantly worsened" during this time period. (Tr. 51). Dr. Lackey opines that Barnard's "overall health has declined greatly over the last five (5) years." (*Id.*).

---

[5] Although the regulations have been revised further since the Appeals Council's decision, the language in paragraph (a)(5) of each regulation in effect from January 17, 2017 to December 15, 2020—which covered the entire time Barnard's claim was pending before the agency—contained the same language as the current regulation. The previous versions of the regulations, effective until January 17, 2017, used neither "possibility" nor "probability." *See* 20 C.F.R. §§ 404.970(b), 416.1470(b) (2016).

Barnard's first argument specific to Dr. Lackey is that, under Eleventh Circuit law, the opinion of a treating physician "must be given substantial or considerable weight unless 'good cause' is shown to the contrary." (*Id.*) (citing *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2003)). Because the Appeals Council simply found there was no reasonable probability the letter would change the administrative outcome, Barnard argues, it failed to apply this standard. (Doc. 12 at 28). However, the standard she recites applies to the ALJ's review, not the Appeals Council's review. *See Phillips*, 357 F.3d at 1241 ("When electing to disregard the opinion of a treating physician, *the ALJ* must clearly articulate its reasons.") (emphasis added). The Appeals Council does not share the ALJ's obligation to provide specific factual findings. *See Parks ex rel. D.P. v. Comm'r, Soc. Sec.*, 783 F.3d 847, 853 (11th Cir. 2015) ("[T]he Appeals Council is not required to make specific findings of fact when it denies review."); *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 784 (11th Cir. 2014) (the Appeals Council not required "to provide a detailed discussion of a claimant's new evidence when denying a request for review."

In any case, the Appeals Council did not err in concluding Dr. Lackey's letter was not material. As the Commissioner points out, (doc. 15 at 12-13), even though the letter came from Barnard's treating physician, it is not a medical opinion within the meaning of the regulations. *See* 20 C.F.R. §§ 404.1513(a)(2) ("A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in various activities), 416.913(a)(2) (same).[6] The letter generally states

---

[6] The Commissioner actually cites the previously-applicable regulations, which provide that medical opinions must come from "acceptable medical sources" (rather than the less limiting "medical sources" per the new regulations, *see* 20 C.F.R. § § 404.1502(a) & (d)), but still require that the opinion "reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." (Doc. 15 at 13) (citing

9

Barnard's health, neuropathy, and bipolar disorder have worsened over five years predating May 9, 2019, but does not indicate any assessment of how Barnard's abilities are affected by those conditions or provide any restrictions or limitations Barnard experiences as a result of them. Moreover, the ALJ stated he considered "the entire medical record," (tr. 63), which includes records of Barnard's treatment with Dr. Lackey at Coosa Pain & Wellness from October 2013 through November 2018, (tr. 511-572, 642-687, 872-896, 1187-1210). To the extent Dr. Lackey's letter summarizes Barnard's general condition during this period, it is at best cumulative to the records the ALJ reviewed. The Appeals Council was not required to do anything more with Dr. Lackey's letter than it did.

### B. Dr. Nichols' Evaluation

Dr. Nichols performed a psychological evaluation of Barnard on December 3, 2019. (Tr. 9-13). Dr. Nichols reviewed summaries of Barnard's medical and psychiatric records prepared by counsel.[7] (Tr. 9). Barnard provided her own reports of spinal pain, agoraphobia, hand pain, asthma, allergies, depression, and fibromyalgia, as well as her personal and family history. (Tr. 9-11). Dr. Nichols then examined Barnard, finding Barnard presented as a "neat and clean individual" with fair eye contact, normal and clear speech, depressed mood (but congruent with Barnard's thought processes), and tearful affect. (Tr. 11). Dr. Nichols found Barnard was oriented to person, place, time, and situation, with thought processes within normal limits and no evidence of confusion, loose associations, tangentiality, flight of ideas, or thought blocking. (Tr. 11). Barnard confirmed obsessions and compulsions as well as panic attacks, but had no auditory or visual hallucinations.

---

20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).

[7] Dr. Nichols provided some details about these records, but it is unclear whether she is paraphrasing counsel's summaries or simply reproducing them. (*See* tr. 9).

(Tr. 11). Barnard had adequate speed of mental processing, and could count backwards from 20 to 1, perform serial threes and sevens (using her fingers to stay on track), and spell "world" backwards, although she struggled with complex arithmetic such as multiplication. (Tr. 11). Dr. Nichols found Barnard had intact recent memory functions, fair immediate memory functions, and grossly intact remote functions, but impaired delayed memory causing her to recall zero objects after a 10-minute period. (Tr. 11). Barnard also had an adequate general fund of knowledge. (Tr. 11). Barnard could think abstractly, such as by interpreting the meaning of proverbs. (Tr. 11). Dr. Nichols considered Barnard's judgment and insight to be good, and estimated her to be functioning within the low average range of intelligence. (Tr. 12). Based on her assessment, Dr. Nichols provided a range of diagnostic impressions including the Axis I diagnoses of Bipolar I Disorder, MRE Depressed, severe; Opioid Use Disorder, in remission; Obsessive Compulsive Disorder; Alcohol Use Disorder; Narcotic Use Disorder, in remission; Specific Learning Disorder, with impairment in reading; and Specific Learning Disorder, with impairment in math. (Tr. 12). In summary, Dr. Nichols concluded there had been no resolution to Barnard's bipolar disorder symptoms despite five years of treatment, exacerbated by Barnard's physical and financial issues. (Tr. 13). Dr. Nichols opined:

> [Barnard] appeared able to understand instructions, but would have difficulty remembering complex instructions to carry them out. She is unable to sustain concentration and persist in a work relate [sic] activity at a reasonable pace. She is unable to maintain effective social interaction on a consistent and independent basis with supervisors, coworkers, and the public. She is unable to deal with normal pressures in a competitive work setting. She is able to manage her own funds.

(Tr. 13).

Nearly a year later, on November 4, 2020, Dr. Nichols filled out a form Mental Health Source Statement, in which she opined Barnard would be limited in a variety of ways. (Tr. 8).

According to Dr. Nichols, although Barnard could interact with supervisors and coworkers and understand, remember, or carry out very short and simple instructions, she could not: maintain attention, concentration and/or pace for periods of at least two hours; perform activities within a schedule and be punctual within customary tolerances; sustain an ordinary routine without special supervision; adjust to routine without special supervision; or maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness.  (Tr. 8).  Dr. Nichols indicated Barnard would be off task 30-40% of the time and would miss 10-15 days of work in a 30-day period.  (Tr. 8).  Asked whether Barnard's limitations existed back to June 21, 2016, Dr. Nichols circled "yes."  (Tr. 8).

As with Dr. Lackey's letter, Barnard challenges the Appeals Council's assessment of Dr. Nichols' statement as unsupported by analysis.  (Doc. 12 at 28).  Specifically, Barnard points to *McClurkin v. SSA,* 625 F. App'x 960 (11th Cir. 2015), in which the Eleventh Circuit reversed the denial of benefits due to an ALJ's failure to state with "some measure of clarity" his grounds for rejecting an examining physician's opinion.  (Doc. 12 at 28).  However, for the reasons discussed above, the Appeals Council was under no obligation to provide the same level of analysis as an ALJ.  *See Mitchell*, 771 F.3d at 784.  It did not err by not explaining its assessment of Dr. Nichols' report.

Other than simply describing Dr. Nichols' report as "an independent psychological evaluation from an examining psychologist which is supported by mental health treatment records," (doc. 12 at 29), Barnard does not indicate why the Appeals Council's assessment of the evidence was erroneous, such as an evidentiary gap in the record crucial to the ALJ's decision but filled by Dr. Nichols' report.  *See, e.g., Epps v. Harris,* 624 F.2d 1267, 1272-73 (5th Cir. 1980) (remanding when ALJ premised denial on lack of radical treatment, and the Appeals Council affirmed ALJ's

decision even after being presented with evidence that the claimant had been referred for radical treatment). In other words, Barnard does not indicate any reason why the Appeals Council should not be taken at its word that it adequately considered Dr. Nichols' report. This appears to be exactly the situation addressed by *Mitchell*, where "the Appeals Council expressly stated . . . it had considered [the] additional evidence," and the Eleventh Circuit found there was "no basis on this record to second-guess that assertion."[8]  *Mitchell*, 771 F.3d at 783.

While the undersigned declines to speculate as to the exact reason why the Appeals Council found Dr. Nichols' opinion did not show a reasonable probability of changing the administrative outcome,[9] at least two points suggest its decision was not simply a rubber stamp of the ALJ's decision without adequate review of the new evidence. First, the ALJ found the August 22, 2017 report of consultative examiner Samuel Fleming, Ph.D., (tr. 736-39), to be persuasive. (Tr. 63). Dr. Fleming's report mirrored many of Dr. Nichols' mental findings. Barnard (then known as Teresa J. Hand) displayed normal thought processes, an adequate general fund of information, adequate abstraction, orientation as to person, place, time, and situation, adequate immediate recall and recent memory, and low average intelligence, while struggling with delayed recall. (Tr. 737-38). However, Dr. Fleming's findings were *worse* than Dr. Nichols' findings in several areas. For example, Dr. Fleming found Barnard had only marginal personal hygiene, deficient judgment and

---

[8] This is quite different from another scenario that can arise when a claimant provides new evidence to the Appeals Council. In *Washington*, the Appeals Council refused to consider some evidence submitted by the claimant, including the evidence the Eleventh Circuit found warranted remand. 806 F.3d at 1320. The Eleventh Circuit expressly distinguished that situation from the one here, where "the Appeals Council considered the additional evidence and then denied review." *Id.* at 1321, n.5. Instead, in cases like this, the *Mitchell* standard applies. *Id*.

[9] The Commissioner guesses at the Appeals Council's motives for rejecting Dr. Nichols' opinion, arguing it "likely concluded . . . that an ALJ, upon consideration of Dr. Nichols' evaluation, would likely find Dr. Nichols failed to provide objective medial evidence in support of her opinions" regarding Barnard's limitations. (Doc. 15 at 15).

insight, was unable to perform serial sevens, and had deficient concentration and attention.[10] (Tr. 737-38). Nevertheless, Dr. Fleming found Barnard to be capable of understanding, carrying out, and remembering instructions, as well as responding appropriately to supervisors, coworkers, and work pressures in a work setting. (Tr. 739). These conflict with the substantially more severe restrictions Dr. Nichols supported. As one-time non-treating, examining physicians, Dr. Nichols and Dr. Fleming stand roughly in the same posture; an ALJ has no obligation to give their opinions any particular deference or consideration. *See Crawford v. Comm'r Of Soc. Sec.,* 363 F.3d 1155, 1160 (11th Cir. 2004); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). Although an ALJ could conceivably credit Dr. Nichols' limiting assessment over Dr. Fleming's less restrictive assessment and conclude Barnard is disabled, that possibility is made considerably more remote in this case by the facts that (1) Dr. Flemings' more problematic evaluation was already before the ALJ and (2) even with that evaluation, the ALJ did not impose the severe restrictions called for by Dr. Nichols' report.

Second, the ALJ found that although Barnard has mental limitations, more stringent limitations were not called for because Barnard had "very little mental health treatment after mid-2017," and those examinations showed normal mood and affect, good mental function, and orientation in all spheres. (Tr. 63). Dr. Nichols' evaluation is dated December 3, 2019 (about two and a half years after mid-2017) and her Mental Health Source Statement is dated November 4, 2020 (about three and a half years after mid-2017). There is little reason to conclude Dr. Nichols'

---

[10] The one area Barnard appears to have performed worse in Dr. Nichols' evaluation than in Dr. Flemings' evaluation was delayed recall. In Dr. Fleming's evaluation, Barnard could only recall three of five objects after a 5-10 minute period. (Tr. 738). However, in Dr. Nichols' evaluation, Barnard recalled zero objects after ten minutes. (Tr. 11). That said, both evaluators found this demonstrated impairment.

evaluation has any bearing on Barnard's lack of treatment, the reason the ALJ cited for not imposing more severe mental limitations even with Dr. Flemings' evaluation. Therefore, on the facts here, there is no basis to conclude the Appeals Council erred in its evaluation of Dr. Nichols' report.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Barnard's claims for a period of disability, DIB, and SSI is **AFFIRMED**.

DONE this 24th day of September, 2021.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE